**JUDGE'S COPY**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

2005 JUL 12 P 1: 41

WILLIE J. FAIR,
        Plaintiff,

**FILED**

vs.                                                     CIVIL NO.: 04-CV-72337-DT

COMMISSIONER OF                          HON. GEORGE CARAM STEEH
SOCIAL SECURITY,                            MAG. JUDGE WALLACE CAPEL, JR.
        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part,

deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent

with this Report.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying

Plaintiff's application for disability insurance benefits [DIB]. Plaintiff filed for benefits on March

5, 2001, alleging disability since January 21, 2000, due to "bilateral carpal tunnel syndrome [CTS],

hands, elbow, and shoulder."[1] (TR 39, 66-68, 76, 94). Benefits were denied initially on June 12,

2001. (TR 45-48). A de novo hearing was held on September 5, 2002, before ALJ William J.

---

[1]The Administrative Law Judge [ALJ] stated that Plaintiff previously filed an application for
DIB on March 14, 2000, alleging that he was disabled since January 21, 1997. (TR 22, 55-57, 62-
64). The application was denied initially on May 26, 2000, and Plaintiff did not appeal. (TR 22, 40-
44). The ALJ found good cause to reopen the prior determination under § 404.988 and consider
disability from an onset date of January 21, 1997. (TR 22).

1

Musseman. (TR 211-39). In a decision dated November 1, 2002, the ALJ found that Plaintiff could perform some light work. (TR 22-30). Accordingly, Plaintiff was found not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on May 21, 2004. (TR 5-8). The Plaintiff commenced this action for judicial review.

A.    **PLAINTIFF'S TESTIMONY**

Plaintiff testified that he was born on December 27, 1948, and was fifty-three years old at the time of the hearing. (TR 214-15). He stated that he completed the eighth grade and was able to read "some, not very good." (TR 215). He stated that he could not read the newspaper, novels, or comic strips. Id. He stated that he could read "some of" a recipe in a cookbook, but that he did not cook. Id. When asked what he did in fact read, Plaintiff replied, "[n]othing, not much." Id. He stated that he could read traffic signs. (TR 215-16).

Plaintiff stated that in 2000, he took math and reading classes at Northwestern High School. (TR 216). He stated that he took two semesters of classes at the fifth and sixth grade levels, but that he did not pass. (TR 216-17). He stated that he thought his reading level was at third or fourth grade level. (TR 217). He explained that he has his children read something for him if he cannot and that he can write some things, but that he had to have his daughter fill out his social security forms for him. Id. He stated that he also has problems adding and subtracting. Id. When asked if he could make change, he stated, [s]ome part of it, yeah." Id.

Plaintiff testified that he was currently unemployed and last worked in 1998 or 1999 at General Motors [GM] Truck and Bus Assembly.[2] (TR 217-18). He stated that he worked there for twenty-

---

[2]Later, the ALJ mentioned that there were earnings in 1999 and 2000. (TR 232). Plaintiff was not sure of the exact time that he stopped working or whether the earnings were sick pay, vacation pay, or worker's compensation. (TR 232-33).

2

seven years and his last position was repairing trucks, but he also built and installed seats. (TR 218).

He stated that he always worked with his hands at GM and "did a little of everything." Id. He stated

that the jobs were not easy, but did not require training. (TR 219). He explained that the last job he

had repairing trucks required him to fix a truck when it was completed, but would not start up. (TR

219-20).

Plaintiff stated that he stopped working because his CTS worsened in his hands, as well as his

elbows and shoulder. (TR 220). He explained that it began in both his hands, but his right hand is the

worse of the two. Id. He stated that he has sharp pains in his hand and has to "ball it up" every twenty

minutes. Id. He explained that the pain in his hands is constant. (TR 222). He also stated that he has

numbness and tingling on a constant basis. (TR 220). Plaintiff stated that he has had physical therapy

for his hands, but not any surgery, although it has been discussed. (TR 220-21). Dr. Good, Dr. Sinaris,

and Dr. Henderson treat Plaintiff's hands. (TR 221). He stated that Dr. Henderson discussed the

surgery with him, but he was afraid to have it. Id. However, he stated that now he thinks that surgery

is inevitable. Id.

Plaintiff stated that he has had shoulder pain since around 1995 or 1996. (TR 222). He stated

that the pain is constant and if he tries to do anything, such as pushing and pulling, the pain worsens.

Id. He stated that he was given the restrictions of "no lifting, no gripping, no lifting no greater than....

fifteen pounds." Id. He stated that GM tried to accommodate these restrictions, but could not, due to

Plaintiff's continued pain. (TR 222-23). He explained that one of the new jobs he was given with the

restriction involved inspecting trucks on the assembly line, but again, he was unable to complete it due

to pain in his hands and shoulders and stopped after about two or three months. (TR 223-24).

Plaintiff testified that he is currently retired with a pension. (TR 224). He stated that the pain

in his hands and his shoulders are the only things restricting him from work. Id. He stated that he

3

watches television, but even that bothers him. Id. He stated that he is married. Id. He does not do any gardening or yardwork. Id. He stated that his son and daughters do the yardwork and take care of him. (TR 224-25). He stated that he does not shovel snow. (TR 225).

Plaintiff stated that he does not have any hobbies, but he does leave the house "just to ride around." Id. He states that he goes out to eat sometimes, but does not go out to the movies. (TR 225-26). He stated that he does go to church and can drive a car. (TR 226). He testified that he has not taken any trips in the past year and the last time he drove on a long trip was six or seven years ago. Id. He stated that his daughters do the grocery shopping for him. Id. He stated that he does not work on his car or do any projects around the home. Id. He stated that he has lived in an apartment complex for the last two years due to his condition. (TR 227). He stated that he does not have a computer at home or play video games. Id.

Plaintiff stated that he has pain if he touches his thumb to his forefingers. Id. He stated that he has tried, but that he cannot open a jar. (TR 228). He stated that he has his children open things for him, but he is able to open mail envelopes. Id. He stated that he can button his clothes "[m]ost of the time," but due to the pain, he sometimes has help. Id. He stated that he probably could not lift ten pounds without dropping it, but then stated that he probably could lift ten pounds once in a while. (TR 228-29). He stated that he does not have a problem sitting or standing, but has problems reaching, pushing, pulling, and gripping. (TR 229).

**B.     MEDICAL EVIDENCE**

Plaintiff's Motion for Summary Judgment challenges one technical, legal aspect of his case: the issue of literacy and a mandatory disability finding under Grid Rule 202.09. Plaintiff's Motion does not challenge the ALJ's exertional or non-exertional RFC findings. Accordingly, due to the

4

specialized and compact nature of Plaintiff's legal challenges, those portions of Plaintiff's medical

record that pertain to disposition of his Motion are contained in the Analysis.[3]

### C.   VOCATIONAL EXPERT'S TESTIMONY

Mary Williams, a vocational expert [VE], testified at the hearing. (TR 230-38). The VE stated

that Plaintiff's past work was unskilled and light to medium in exertion. (TR 231). The ALJ presented

a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work

experience and assuming claimant was

> limited to an exertional level the full range of light, with non-exertional limitations of
> no repetitive fine manipulation, no repetitive gripping or grasping with force, no air,
> torque or vibrating tools, no keyboarding, no repetitive elbow flexation, which would
> also include no push/pull, no over chest level work, no written instructions, no report
> writing, and no money handling.

(TR 232). The VE stated that Plaintiff could not do any of his past relevant work, but that there were

other jobs compatible with these limitations. Id. The VE identified the following positions: inspector,

12,915 positions; host, 4,683 positions; and sorter, 2,415 positions. (TR 233). The VE stated that at

the sedentary level there would be 1,785 visual inspection positions that involve some handling, but

no fine manipulation. (TR 234). The VE stated that there were no other positions at any other

exertional levels. Id.

Plaintiff's counsel then questioned the VE. (TR 234-38). The VE asked whether inabilities to

reach, push, or pull would affect the ability to perform those jobs identified. (TR 235). The VE stated

that the positions would not require pushing or pulling and reaching would be in front of the claimant

and very limited. Id.

---

[3]See Section E, infra.

5

Plaintiff's counsel then asked about the lifting requirements. Id. The VE stated because the positions are in the light category, they could require lifting of up to twenty pounds. Id. The VE stated that an ability to lift only ten pounds occasionally could preclude some of the positions. Id. The VE explained that the host position only required minimal lifting, "but . . . up to 20 pounds," and the inspection job would require lifting less than ten pounds. Id. The VE stated that the inspection job would only require picking up and moving small items. (TR 235-36).

Plaintiff's counsel then asked whether the inability to read and write would preclude any of the positions listed. (TR 236). The VE stated that the jobs identified "require the lowest DOT rating so it would require minimal writing and reading - - minimal at all. They both - - they all received the lowest rating that the DOT gives for a requirement for reading and writing." Id. Plaintiff's counsel asked what 'minimal' meant. The VE replied that numbers were assigned to the positions by the DOT and the positions listed are at the lowest level of number one. (TR 236-37). The VE stated that the inspector and sorters would not have to read and write at all. (TR 237). She stated that the only scenario she could imagine where a host would have to read would be to see and identify table numbers on a sheet to cross off the table that they just seated in a restaurant. (TR 237-38).

**D.    ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "claimant has bilateral carpal tunnel syndrome, ulnar nerve entrapment and cubital tunnel syndrome, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (TR 26, 29). The ALJ found Plaintiff not to be fully credible. (TR 26-27, 29). Thus, he determined that Plaintiff had the RFC to perform a limited number of unskilled light jobs. (TR 28-30). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 30).

6

E.    **ANALYSIS**

Plaintiff advances a single claim in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because he is illiterate and according to the Grids, a finding of disability is mandatory.[4]  In response, Defendant's Motion for Summary Judgment contends that the ALJ's decision is supported by substantial evidence.[5]  Plaintiff Replied to Defendant's Motion on November 24, 2004.

1.    **Standard of Review**

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g) (1997).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r

---

[4]Plaintiff's Motion for Summary Judgment and Brief filed October 29, 2004 (hereinafter "Plaintiff's Brief") at pages 10-13.

[5]Defendant's Motion for Summary Judgment and Brief filed November 19, 2004 (hereinafter "Defendant's Brief"), at pages 5-8.

of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished).  Applying these standards, I will

analyze each of Plaintiff's claims.

Plaintiff argues that he is entitled to benefits because the ALJ limited him to light, unskilled

work, and he is illiterate.  He asserts that the ALJ should have applied Grid Rule 202.09,[6] and therefore

would have found Plaintiff disabled.[7]  The definition of illiteracy can be found in the social security

regulations, which read, in pertinent part:

> [i]lliteracy means the inability to read or write. We consider someone illiterate if the
> person cannot read or write a simple message such as instructions or inventory lists
> even though the person can sign his or her name. Generally, an illiterate person has
> had little or no formal schooling.

20 C.F.R. § 404.1564(b)(1).  The ALJ did not make a specific finding on literacy.  However, he did find

that Plaintiff had a limited education.  (TR 28, 29).

> Limited education means ability in reasoning, arithmetic, and language skills, but not
> enough to allow a person with these educational qualifications to do most of the more
> complex job duties needed in semi-skilled or skilled jobs. We generally consider that
> a 7th grade through the 11th grade level of formal education is a limited education.

20 CFR § 404.1564.  However, the ALJ did not state on what basis he made the education finding.

Plaintiff completed the eighth grade according to his disability report and his testimony.  (TR 82, 100,

215).  Plaintiff stated that he did not attend special education classes.  (TR 82, 100).  However,

> the numerical grade level that you completed in school may not represent your actual
> educational abilities. These may be higher or lower. However, if there is no other
> evidence to contradict it, we will use your numerical grade level to determine your

---

[6]Grid Rule 202.09 requires a finding of disability where the Plaintiff is closely approaching
advanced age, the ALJ finds that he or she is capable of light work, Plaintiff's past work was
unskilled, and he or she is illiterate or unable to communicate in English. Social Security
Administration Regulations, Part 404, Subpart P, Appendix 2, Table No. 2.

[7]Plaintiff's Brief at page 11.

educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education.

20 CFR § 404.1564(b). This may be especially true in this case where the Plaintiff testified that he took classes at the fifth or sixth grade level and failed. (TR 217). Unfortunately, Plaintiff did not provide any information regarding these classes or any information regarding his reading or writing level. Plaintiff's counsel did submit a request testing for same from the Office of Hearing and Appeals on August 29, 2001, and this request is part of the record. (TR 54).

Defendant points out that Plaintiff stated that he reads the bible for thirty to forty-five minutes at a time.[8] (TR 105). However, Plaintiff testified that he could not read the newspaper, novels, or comic strips. (TR 215). He stated that he could read some of a recipe, but that he did not cook. Id. He further testified that he could read traffic signs, but has his daughter read the mail to him. (TR 215, 217). He stated that his daughter also filled out his forms for Social Security, (TR 217), although Defendant argues that "an application for disability pension benefits appears to have been competed by Plaintiff."[9] (TR 201, 217).

_____

[8]Defendant's Brief at page 7.

[9]Defendant's Brief at page 7 (citing (TR 201, 217)). In an unpublished case, the Sixth Circuit stated that

upon review, we conclude that the Commissioner failed to develop the record adequately regarding Lambdin's claim of illiteracy. Of particular concern to us was the district court's need to rely on Lambdin's having filled out the complex forms needed to apply for benefits. It appears to us from the record that the application may have actually been completed by someone on Lambdin's behalf. We are also of the view that the district court may have considered the literacy test to be more restrictive than some of the caselaw indicates is appropriate.

Lambdin v. Comm'r of Social Sec. Admin., 62 Fed.Appx. 623, 625, 2003 WL 1870730, *2 (6th Cir. 2003).

9

The ALJ noted that Dr. Good stated that Plaintiff could write legibly and hold a pencil. (TR 25, 27). Further, he stated that Plaintiff's RFC included "no report writing . . . and . . . no jobs that require the claimant to read written instructions." (TR 27). Nonetheless, although the ALJ also made the limited education finding, he did not address Plaintiff's literacy in any direct manner. Thus, the issue becomes whether the ALJ's decision as it relates to literacy, as challenged here, is supported by substantial evidence.

In 1989, a Tennessee district court judge stated that

> Sixth Circuit case law appears to establish the following propositions. First, a person with a 6th grade education and who can read and write, but not too well, and who also cannot do simple arithmetic, is not illiterate, but likewise does not have a "limited education." Second, a person with a third or fourth grade education and a second grade reading level is not illiterate if he has good learning and comprehension abilities and good communication skills, as well as work experience which can be deemed educationally significant. Third, it is unclear whether "functionally illiterate" is the same thing as "illiterate" for purposes of the grid classifications. Nevertheless, it is clear that, as is in accord with the plain language of the regulations, one is illiterate if one cannot read or write a simple message. This is true regardless of how many years the claimant attended school. However, a sixth grade education standing by itself with no evidence reducing its significance, does prevent a claimant from being classified as illiterate.

Welchance v. Bowen, 731 F.Supp. 806, 815-16 (M.D.Tenn. 1989). Almost five years later, a district court judge here in the Eastern District of Michigan, recognized in an unpublished decision that

> there is very little case law governing what constitutes substantial evidence of a claimant's literacy. However, a few relevant conclusions can be drawn. A claimant's last grade level completed is not conclusive evidence of educational ability. 20 C.F.R. § 404.1564(b) (1989); Boone v. Secretary of HHS, 595 F.Supp. 758, 759 (E.D.Mich.1984). Nor is the ability to sign one's name proof of literacy. 20 C.F.R. § 404.1564(b)(1) (1989). Still, the standard for literacy has been "pitched quite low." Glenn v. Secretary of HHS, 814 F.2d 387, 391 (7th Cir.1987). The ability to write the simplest instructions is all that is required. Id.

10

Rhodes v. Sec. of Health and Human Servs., 1994 WL 750633, *7 (E.D.Mich.,1994) (unpublished).

The Sixth Circuit remanded a strikingly similar case where, as here, the claimant stated that he was "not very good" at reading. (TR 215). The ALJ's decision included the following observations as noted by the Court: [w]hile appellant has a fifth grade education, he claims that he can only read and write "not too good"; [sic] he cannot do simple arithmetic. Record at 32. Nonetheless, he was found to have a limited education. His previous work consisted of . . . unskilled work. Kirk v. Sec'y of Health and Human Servs., 667 F.2d 524, 539-40 (6th Cir. 1981). The ALJ in Kirk also found that Plaintiff could do light work. Id. at 540. The Sixth Circuit found that "absent reason felt to be in support of the given conclusion, the final decision of the Secretary cannot be deemed to be supported by 'substantial evidence'" where the ALJ did not explain his reasons for finding that the claimant "had at least a limited education." Kirk, 667 F.2d at 541 (citations omitted).

Further, in a more recent and yet another strikingly similar, albeit unpublished case, the Sixth Circuit stated that

> The initial decision of the ALJ issued in May 1996 found that Hollins, at age 51, was "closely approaching advanced age," had only "limited" education and no past relevant work experience or transferable skills. The ALJ concluded that, if she were capable of performing the full range of light work (which he also concluded she was not), Hollins would be "not disabled" under Rule 202.10, Table No. 2, Appendix 1, Subpart P, Regulations No. 4. Admin. R. at 17, ¶¶ 8- 12. [FN2] *It was precisely at this point in the analysis where, in the Hollins I court's view, the ALJ made one of his "narrow errors" by completely failing to examine the question of literacy.* Had he analyzed Hollins's literacy and determined that she was illiterate, he would have had to apply *not* Rule 202.10, but Rule 202.09 which, given her age and lack of relevant work experience, would have directed a finding of "disabled."

11

Hollins v. Massanari, 49 Fed.Appx. 533, 537, 2002 WL 31398968, *3 (6th Cir. 2002) (unpublished). (first emphasis added).

The present ALJ simply did not make a finding of literacy. The ALJ did find that Plaintiff had a limited education. Plaintiff testified that he has an eighth grade education. (TR 215). However, there was evidence in the record and testimony at the hearing that contradicts a finding that Plaintiff is able to read and write at the eighth grade level. As previously stated, only where "there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 CFR § 404.1564(b). The ALJ did not examine the contradictory evidence regarding Plaintiff's literacy and meaningful appellate review of same is therefore impossible.

### 2.    Remand Versus Benefits

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff. It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec. of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted). More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Here, the ALJ's adverse decision was deprived of substantial evidentiary support because the ALJ did not address Plaintiff's literacy. All the factual issues have not been resolved. The ALJ found that Plaintiff had a limited education, but failed to articulate his reasons for such a finding. Therefore, it is recommended that upon remand, the issue of Plaintiff's literacy be examined and

12

thoroughly evaluated. Testing of Plaintiff's reading and writing ability may be especially helpful in this respect.

## III.   CONCLUSION

For the reasons stated, I respectfully recommend that the court **GRANT IN PART** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case to the Defendant Commissioner for further proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

Dated:    **JUL 1 2 2005**

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

A TRUE COPY
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
BY
DEPUTY CLERK

13

<u>CERTIFICATION OF SERVICE</u>

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

**UNITED STATES OF AMERICA** )

2005 JUL 12  P 1: 41

       ) ss  **Case No.: 04-CV-72337–DT**

**EASTERN DISTRICT OF MICHIGAN** )

# FILED

    I, the undersigned, hereby certify that I have on the <u>12th</u> day of <u>July 2005</u>, mailed a

copy of the "<u>Report and Recommendation</u>," in the foregoing cause, pursuant to Rule 77(Davenport),

Fed.R.Civ.P., to the following:


Honorable George Caram Steeh
United States District Judge
231 W. Lafayette, Room 235
Detroit, Michigan 48226

Janet L. Parker
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708


Robert J. MacDonald
653 S. Saginaw, Suite 200 Paterson Building
Flint, Michigan 48502

Social Security Administration
Office of the Regional Counsel
200 W. Adams Street, 30th Floor
Chicago, Illinois 60606


           Marsha Heinonen
           Deputy Clerk